## Brisben *et al. versus* Wilson.

1. Property was leased for $1000 per annum payable quarterly, with a stipulation that the lessees might give up the lease on six months' notice; the lessees wishing to give up the lease agreed to add $500 to the rent then due in lieu of the notice. *Held*, that the $500 was rent and could be distrained for.

2. After rent had become due the lessees assigned all their property to the lessor for the benefit of creditors; the assignment was declared to be invalid, the lessor then distrained. *Held*, that he could lawfully do so, notwithstanding he had accepted the assignment.

3. A distress was made on the 27th of November, and notice given the same day. An appraisement on the 2d of December was too early.

4. Such an irregularity makes the landlord a trespasser *ab initio*; a sale under such irregularity is invalid and trover can be maintained against the purchaser.

5. Time is to be computed excluding the day on which the act is done from which the count is to be made.

February 2d 1869. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., absent. WILLIAMS, J., at Nisi Prius.

[Brisben v. Wilson.]

Certificate from the court at Nisi Prius: No. 246, to January Term 1868.

This was an action on the case by Theodore M. Wilson, James Seddon and William M. Brisben, to the use of Edward. R. Worrell, receiver, against Charles H. Wilson, commenced January 4th 1868. The declaration contained five counts, only one of which was insisted on. It was in trover for a quantity of goods belonging to the plaintiffs, which the defendant had distrained and sold for rent; the plaintiffs alleged that the distress was illegal.

The facts in the case were these. On the 1st of August 1866, the defendant leased to the plaintiffs as partners, a factory in Philadelphia for three years at the rent of $1000 per annum, payable quarterly. It was stipulated in the lease that the plaintiffs might give it up on six months' notice of their intention so to do. On the 7th of November 1867, the plaintiffs owing $1150 for rent, proposed to surrender the lease, the defendant objecting and claiming the benefit of the six months' notice; it was arranged that instead of requiring the notice $500 should be added to the rent; $1650 was the amount agreed on by the parties to be then due for rent, and the building was surrendered to the defendant.

On the 16th of November 1867, an assignment of all the firm property and all the individual property of the partners for the benefit of creditors was made to the defendant. It was executed as follows:—"Theo. M. Wilson [SEAL], James Seddon [SEAL], Wilson, Seddon & Brisben [SEAL]." The assignment was recorded November 21st.

On the 23d of November, Brisben filed a bill in equity in the Supreme Court against Theodore M. Wilson, James Seddon and Charles H. Wilson, for a dissolution of the partnership, an account, receiver and injunction. On the 23d of November, an injunction was issued to the defendant restraining him from recording the assignment and from acting in any way under it. On the 27th of November, the plaintiff issued a warrant of distress for the rent stated to be $1659.50, and on the same day his bailiff levied on the goods of the plaintiffs on the premises. On the same day a notice of the distress was served on Theodore Wilson and Seddon, on the premises. Brisben received no notice. The goods were appraised on the 2d of December, at $3768. On the same day, by agreement of counsel, a decree was made, that the injunction should be made perpetual; that the firm should be dissolved; that E. R. Worrell should be appointed receiver. The sale under the distress was made December 9th, and on the 28th of the same month, upon the petition of the receiver, the court allowed him to employ counsel, and ordered him to institute suit against the defendant for the unlawful detention and conversion of the plaintiffs' goods. In addition to the foregoing facts, the plaintiffs gave

[Brisben *v.* Wilson.]

evidence for the purpose of showing fraud between the defendant and Theodore Wilson and Seddon.

The plaintiffs asked the court to charge the jury:—

1. That the sum of $500 agreed to be paid to defendant, according to the testimony of James Seddon and Theodore M. Wilson, in consideration of the defendant's acceptance of the surrender of the lease, cannot be treated as rent, so as to authorize a distress; and, therefore, as the defendant distrained for the sum of $500 in addition to the amount of rent due, the distress and sale were illegal, and the plaintiffs are entitled to recover.

2. That it is incumbent upon a party claiming under or alleging the validity of a distress and sale of goods for rent, to show a strict compliance with all the provisions of the Act of Assembly relating to such procedure; and, as the defendant has not shown that five days' notice of the distress was given, as provided by the act, the sale of the constable was illegal, and the plaintiffs are entitled to recover.

3. That the Act of Assembly requires that five full days should be allowed to the lessee to replevy the goods, and in the computation of this time the day of the distress is to be excluded; and, therefore, as the distress was made upon the 27th of November, and the appraisement upon the 2d of December, before the expiration of five days, the sale was illegal, and the plaintiffs are entitled to recover.

4. That the defendant could not lawfully distrain the goods of the plaintiffs during the time he claimed under the deed of assignment of 16th November 1867, and therefore the distress and sale were illegal, and the verdict should be for the plaintiffs.

5. That if the jury believe the distress and sale were made by the defendant in collusion with Theodore M. Wilson and James Seddon, for the purpose of defrauding William M. Brisben, or the creditors of the firm, and that the said three parties purposely kept from William M. Brisben and from the receiver all knowledge of the fact that a distress had been made, the whole proceeding would be illegal and void, as against the creditors of the firm, and the plaintiffs would be entitled to recover.

C. J. THOMPSON charged:—

"This is an action of trover, brought in the names of Theodore M. Wilson, James Seddon and William M. Brisben, trading as Wilson, Seddon & Brisben, to the use of Edward R. Worrell, receiver, against Charles H. Wilson. All the counts in the *narr.* have been withdrawn, except the count in trover.

"This proceeding is founded on a fiction of finding and a subsequent conversion by the defendant of the property to his own use, and is a mode of trying the right to the property—being predicated of the idea that the property came into the defendant's possession, and that he refuses to deliver it up.

[Brisben *v.* Wilson.]

" The defendant is charged with having received a quantity of goods belonging to the firm, to which he replies :—' I distrained upon and sold the same for rent; none were bought by me; they were sold to others.' Primâ facie, that would be a justification; but it is replied :—' You had no right to sell, and you did not sell the same according to law; and your whole proceeding was illegal and void; and, secondly, that the whole was a fraudulent contrivance to defraud William M. Brisben, one of the partners, and the creditors of the said late firm.' The plaintiffs have requested me to charge you as stated in their points submitted. Points are propositions of law, founded on the evidence, which are alleged to be the law, and upon which counsel ask the court to charge.

" 1st point. I am asked to tell you that this is the law. In view of the testimony of Theodore M. Wilson and James Seddon, I cannot charge you as requested. The firm were tenants for three years, at a fixed rate, which they could surrender upon giving six months' notice. The tenants came to the conclusion to surrender before the term ended; and it seems to have been agreed that six months' rent, amounting to $500, should be considered as due and included with the rent past due. If you believe the testimony, all agreed to this, and for this reason I cannot direct you that the sale was illegal by reason of the $500 being included in the distress. I say to you that the defendant could include this as a part of a gross sum agreed to be due him for rent, and distrain. I therefore refuse to charge as requested.

" 2d point. The general doctrine is, that the landlord must proceed according to law. But I dissent from the statement that the defendant has not shown that proper and sufficient notice, as provided by the act, was given in this case. The testimony of the constable is, that he gave notice to two of the partners, Theodore M. Wilson and James Seddon, on the premises. This is all he was bound to do. A notice to one of the partners would have been sufficient. The notice, in point of time, was sufficient. The distress was made on the 27th November 1867, and the appraisement on the 2d day of December 1867. This was sufficient in time.

" 3d point. This point is answered by the answer to the preceding point. I cannot charge you as requested in this point :

" 4th point. I might negative this point without more, but say, if a valid assignment had been made and concluded to the defendant, he could not distrain himself. But, in fact, it was declared invalid by a decree of this court. It never was an assignment. The objection to it went to its very foundation, and was based upon the fact that it never was valid. The defendant was then remitted to his rights as landlord, and among them that to distrain for rent. This he did not do until after he had been

[Brisben *v.* Wilson.]

enjoined by preliminary injunction against proceeding under the said assignment.

"5th point. I assent to this, and say, in addition, that it is to be supported by direct testimony, or circumstances from which it is to be inferred. You are to look at the facts. It is for you to say whether it was for the purpose of defrauding Brisben, or the creditors of the partnership. If you find that, you may find for the plaintiffs; if you do not find that, your verdict must be for the defendant."

The jury found for the defendant.

The plaintiffs took a writ of error.

The errors assigned were—

1 and 4. The answers to 1st and 4th points.

2 and 3. The answers to the 2d and 3d points.

*A. Hart* and *F. B. Gowen*, for plaintiffs in error.—The defendant had no right to issue a distress whilst he claimed under the assignment. Everything had been done to make the assignment complete: Dallam *v.* Fitler, 6 W. & S. 326. The $500 agreed to be allowed in place of the notice was not rent; it was not a return for possession: 2 Bl. Com. 41. The rent must be in arrear to justify a distress: Lansing *v.* Rattoone, 6 Johns. 43; Dennison *v.* Lee, 6 Gill & Johns. 383; Skerry *v.* Preston, 2 Chitty 245. In computing time, the day on which the distress is made is to be excluded: McKinney *v.* Reader, 6 Watts 34; Wallace *v.* King, 1 H. Blacks. 13; Butts *v.* Edwards, 2 Denio 164; Act of March 21st 1772, § 1, 1 Sm. L. 370, Purd. 610, pl. 1; Goswiler's Estate, 3 Penna. R. 200; Cromelien *v.* Brink, 5 Casey 522; Marks *v.* Russell, 4 Wright 372; Thomas *v.* Association, 3 Phila. 425; Bank *v.* Ives, 2 Hill 355; Robinson *v.* Waddington, 13 Ad. & Ell. 753. An irregularity in a sale under distress makes the landlord trespasser *ab initio:* 14 S. & R. 399; McKinney *v.* Reader, *supra.* In such case trover is maintainable: Smith *v.* Meanor, 16 S. & R. 375; McElroy *v.* Dice, 5 Harris 163; Briggs *v.* Large, 6 Casey 287; Taylor on Land & T., § 768.

*R. P. White* (with whom was *G. H. Earle*), for defendant in error.—The addition of the $500 was but an agreement to pay the rent in advance, and if too much were claimed the plaintiff could not recover in trover: McKinney *v.* Reader, 6 Watts 34; Tancred *v.* Leyland, 16 Ad. & Ell. 669; Glynn *v.* Thomas, 11 Ex. 870; Whitworth *v.* Smith, 1 M. & Rob. 193. The appraisement was not too early: Pierpont *v.* Graham, 4 W. C. C. R. 232; Sims *v.* Hampton, 1 S. & R. 411; Hampton *v.* Ehrenzeller, 2 Br. 18. The tenant could replevy, after the appraisement, up to the

[Brisben v. Wilson.]

sale: Jacob v. King, 5 Taunt. 450; Wallace v. King, supra; 3 Bl. Com. (Sharswood) 13 note. The irregularity must be in an act incompatible with the right of the party: Gates v. Lounsbury, 20. Johns. R. 427; Briggs v. Large, 6 Casey 291; Butts v. Edwards, supra; Cooper v. Chitty, 1 Burr. 21; 3 Stephens' N. P. 26, 85.

The opinion of the court was delivered, February 15th 1869, by Sharswood, J.—The 1st and 4th assignments of error have not been pressed upon the argument, nor indeed could they be with any show of reason or authority. The judge was clearly right in his answers to the plaintiffs' 1st and 4th points complained of in these assignments, nor need we occupy time and space in vindicating them.

The 2d and 3d assignments do show, as we think, an error to have been committed in the answers to the plaintiffs' 2d and 3d points; a very natural error from the hasty reading of McKinney v. Reader, 6 Watts 49, which is all that can be given at Nisi Prius. The Act of Assembly of March 21st 1772, 1 Smith 370, provides that the tenant shall have five days next after a distress and notice thereof wherein to replevy the goods: "then and in such case after such distress and notice as aforesaid, and expiration of the said five days," an appraisement shall be made, and "after such appraisement" six days' notice shall be given of sale. McKinney v. Reader determined that the rule adopted and applied in all other cases in the computation of time should also be the rule under this statute, notwithstanding the decision of Wallace v. King, 1 H. Blacks. 13, under the corresponding British statute; a case which, however, has since been expressly overruled as to. this point in Robinson v. Waddington, 13 Ad. & Ell. 753. That rule is, that the time shall be computed excluding the day on which the act was done from which the count is to be made. It does not appear in the report of McKinney v. Reader on what day the appraisement in that case was made: all that does appear is in the statement of facts in the opinion of the court that as the fifth day from Tuesday, the day of the distress, fell on Sunday— dies non juridicus—the tenant had all the day following to replevy. The question, then, really was whether the landlord was a trespasser in leaving the goods on the premises during the five days. ' "Seeing, then," says Kennedy, J., "this time was allowed him for this purpose, can it be considered as prejudicial to him that a reasonable portion of the leased premises was taken by his landlord and appropriated to the safe keeping of the goods distrained during that period?" When it is once settled that the day of the distress is to be excluded in the computation of the time, the Act of Assembly itself determines the rest. The appraisement cannot be made on the fifth or last day. The words of the act are not open to any question or doubt. It is not to

[Brisben *v.* Wilson.]

be made until " after the expiration of the said five days." It would be unwise to speculate about the reason of this, and to say that provided the tenant had on the whole the time allowed by the statute before the sale, as he undoubtedly may replevy after the five days as well as during their running, Jacob *v.* King, 5 Taunt. 451, it matters not to him except as to the costs when the appraisement is made. It could do him no harm, whether in anticipation of the regular time or afterwards. It is to be observed, however, that by the frame of the act, the six days' notice of sale may be given at any time after the appraisement, so that to hold that it may be made on the fifth day, shortens the time of the required notice one whole day. The legislature, however, have so provided, and it is certainly the law of this state as it was of England before the statute of 11 Geo. 2, c. 19, § 19, that such an irregularity makes the landlord a trespasser *ab initio* : Kerr *v.* Sharp, 14 S. & R. 399; and as no legal right or title can grow out of a trespass, the sale is invalid, and trover can be maintained against the purchaser for the goods. The unlawful act of purchase itself is a conversion : McCombie *v.* Davies, 6 East 538.

Judgment reversed, and *venire facias de novo* awarded.