## Lybarger et al. v. Haupt.

*Landlord and tenant—Landlord's warrant—Agreement to pay taxes—Collection of taxes by warrant.*

1. Taxes are not rent unless made so by express agreement.

2. A landlord's warrant will not lie for the collection of a portion of the taxes on the premises leased unless an absolute agreement can be shown on the part of the tenant to pay the taxes as a part of the rent.

3. Where the landlord's warrant directs the constable to sell the tenant's goods levied upon to pay taxes due, the costs and charges, and return the surplus and the constable's costs upon the sale of the goods, but the constable does not sell because the tenant had paid the taxes directly to the tax collector, the constable cannot recover the charges from the landlord. In such case, he should have sold the goods and paid the charges and costs out of the proceeds.

*Justice of the peace—Service of process—Attested copy of summons.*

4. In serving process, the constable must serve an attested copy of the summons on the defendant; if he does not do so, the service is invalid.

*Certiorari* to justice of the peace. C. P. Union Co., May T., 1927, No. 50.

*Lee Francis Lybarger*, for plaintiffs; *M. E. Shaughnessy*, for defendant.

POTTER, P. J., Nov. 18, 1927.—This is a writ of *certiorari* taken out by the defendant, directed to C. M. Steese, a justice of the peace at Mifflinburg, directing him to transmit to us the record of the proceedings had before him in the above-stated case. He has done so, and in our consideration of the controversy thus brought before us, we must render our decision from matters embraced in the record alone. The merits of the case cannot be considered by us in this proceeding.

### Lybarger et al. v. Haupt.

From this record we learn that the defendant, J. Katharine Haupt, is the owner of a farm in Union County, and that one Harold Wenrick was her tenant. It is stated in the record that there was a written agreement between this landlady and her said tenant, by the terms of which he was to pay the half of the taxes assessed against the farm, although we have no record of this alleged agreement among the files of the case. It seems this tenant neglected to pay his alleged half of the taxes, so this landlady applied to L. F. Lybarger, who is one of the justices of the peace in and for Mifflinburg Borough, for a landlord's warrant by which to make a distraint upon the personal goods of her tenant for his alleged half of the taxes. The warrant was issued and was served by D. E. Raker, who is a constable in and for Mifflinburg, who then and there levied upon certain personal property of this tenant. He put up sale bills, and when he went to hold the sale he was informed that the sum claimed as taxes, viz., $49.42, had been paid to the tax collector, and he apparently held no sale.

The costs of Justice Lybarger and Constable Raker on these proceedings were $15.20, which were not paid. We presume this defendant refused to pay them. At all events, the justice and the constable brought suit against her before Justice C. M. Steese for the amount claimed by them. After hearing the testimony, Justice Steese rendered judgment for the plaintiffs and against the defendant for the sum of $10.70, upon the rendition of which judgment this *certiorari* was taken out and the records were brought before us.

A landlord's warrant is one of the proper remedies for the collection of rent in arrears, but can taxes be collected by the landlady from her tenant by this method of procedure?

Taxes are not a rent unless made so by an express stipulation: Becker v. Werner, 98 Pa. 555. A landlord's warrant is available for the collection of rents and nothing else, generally speaking. It is so provided by statute. Where a lessee covenanted not to engage in a certain business in penalty of $100, to be paid in the nature of a rent in certain monthly instalments in addition to the regular rent, this penalty cannot be distrained for: Latimer v. Groetzinger, 139 Pa. 207; Brisben v. Wilson, 60 Pa. 452; Detwiler v. Cox, 75 Pa. 200. And where rent was reserved in kind, the landlord could not substitute for it a promissory note of the tenant for a sum of money and distrain for such money: Warren v. Forney, 13 S. & R. 52. And distress does not lie for apportioned rent: Allegaert v. Smart, 2 W. N. C. 397. But where by the terms of a written lease the tenant is obligated to pay a part or the whole of the taxes, distraint will lie for the recovery of the sum unpaid: Becker v. Werner, 98 Pa. 555; Pettebone v. Murphy, 14 Luzerne Repr. 339.

The power to distrain being incident solely to that which is strictly rent, the landlord can make the tenant's goods liable in distress only if and to the extent that his demand is rent, properly speaking, or if and to the extent that the agreement of the parties has made it rent that is enforceable by distress: Deisher v. Amusement Co., 7 Berks Co. L. J. 197; Latimer v. Groetzinger, 139 Pa. 207, and in order to be effective, the intention disclosed by a lease to make collectible by distress as rent sums expended for improvements and betterments and the like must be clear, as the right of distress cannot be given by implication: Deisher v. Amusement Co., 7 Berks Co. L. J. 197; Latimer v. Groetzinger, 139 Pa. 207; McCann v. Evans, 185 Fed. Repr. 93; Family Laundry Co. Case, 193 Fed. Repr. 297.

So that in order to enable a landlord to distrain for any item except rent, his power to do so must clearly appear from the lease or agreement. We can find no lease or anything like it among the records of this case. What, then, is there to enable this landlady to distrain her tenant's personal goods for his

Lybarger et al. *v.* Haupt.

alleged share of taxes? The warrant states there was an agreement by virtue of which he is under obligation to pay these taxes, but where is this alleged agreement? And if there is one, does it give her the power to distrain in this case? Perhaps he is under obligation to pay them, and perhaps he is not. We do not know. And should he be under obligation to pay the said taxes, is the sum to be paid as a common debt, or is there an agreement that the landlady shall distrain for them? We have nothing to show any such authority on her part, in the absence of which we must hold that no such extraordinary authority existed, that the issuance of this landlord's warrant was not legally authorized, and if this is true, then all proceedings under it are not lawful. Before leaving this branch of the case, we might add that if such an agreement exists, it should be attached to and form a part of the records of this case, so that we might be able to determine whether or not this tenant was subject to a distress for his part of the taxes, as alleged.

Then again, if the warrant is legal, we find it authorized the constable to sell the tenant's personal goods levied upon to pay the taxes due, the costs and charges, and to return the overplus, if any, to the tenant. Under this authority of the warrant, supposing it to have been legal, the constable was to get the costs of the justice and of the constable from the sale of the goods levied upon by him. He could not look to the landlady for them unless he could find no property on which to levy. But we find in his return that he levied on sixteen acres of wheat in the ground, two bay horses and two cows, plenty out of which to make his own and the justice's costs. The record shows that the tenant, after service of the warrant upon him, paid his alleged half of the taxes to the tax collector. Apparently, these costs sued for were not paid by the tenant, but the constable had plenty of property under levy out of which to make them, and he should have done so. It is true the taxes alleged to be due from this tenant, if due at all, should have been paid to the constable, but the fact of them having been paid to the tax collector over the head of the constable did not stop him from proceeding to make them out of the property he had under levy. It is a familiar principle of law that the losing party is responsible for the costs of suits, which applies here as well as elsewhere. Here, the tenant, if the proceedings were regular, was the losing party, and, as such, was liable for the costs of the landlord's warrant, assuming for the sake of the argument that it was lawful and regular. And these plaintiffs cannot look to the landlady for them. The only instance in which a plaintiff is liable for costs when winning is where it is impossible to collect them from the defendant, in which instance the officers can look to the plaintiff for them, because he instituted the action and sought their services.

And now we come to the return of the constable who served the summons on the defendant. It states: "Served the within writ of summons March 10, 1927, upon the within named defendant by reading same and leaving copy with the defendant. So answers John F. Yeisly, Constable." This is sworn to before C. M. Steese, J. P., properly. But this is not a legal return.

The Act of July 9, 1901, P. L. 614, which controls the service of legal process in this State, provides for personal service "by handing a true and *attested* copy thereof to him personally."

The constable gets two copies of the summons from the justice. The one is marked "original" and the other is marked "copy." In the service of the summons, he keeps the original. The copy is to be given to the defendant as the act provides. The original is the one on which he makes his return of service to the justice who issues it, which return must be sworn to. The copy should be attested by him in the following manner: "I hereby certify this to be a true copy of the original summons issued in this case," and he attests it

by signing his name to it, when it becomes a true and *attested* copy of the original summons. That was not done in this case. The return shows no *attested* copy served upon the defendant, which, of itself, is fatally defective. The courts of this State have universally held so. The act of assembly points out the manner in which legal process must be served, and we must in all cases follow it. When a defendant is to be brought into court, the manner of doing so, as prescribed by law, must be strictly followed. The Act of 1901 points out the manner of service of process by a sheriff on page 615, and on page 619, section 16, it is stated that writs issued by any magistrate, justice of the peace or alderman shall be served in the same manner as similar writs are served by the sheriff.

We have gone to some time and length in passing upon this case in which a small sum is involved. But legal principles are involved in it that may affect larger ones, and we think we should be thoroughly understood on them. We generally very much dislike to disturb the judgment of a justice of the peace, but we have laws to follow, just as justices have, which must be strictly followed.

And now, to wit, Nov. 18, 1927, in accordance with our expression herein contained, the *certiorari* is sustained and the judgment of the justice of the peace is reversed, to which ruling an exception is noted for the plaintiffs and a bill is sealed. From Charles P. Ulrich, Selinsgrove, Pa.