# Bakove v. Reilly et al.

*Schweidel & Krekstein*, for plaintiff.
*Paul C. Hamlin* and *David R. Griffith, Jr.*, for defendants.

ALESSANDRONI, J., July 24, 1934—This is an action in trespass against landlord and constable for an alleged illegal distraint. Morris H. Bakove, plaintiff, is the tenant, Thomas F. Reilly, landlord, and Benjamin Stilling, constable, defendants.

On January 12, 1932, Bakove being in arrears, Thomas F. Reilly, his landlord, directed and caused a distraint to be made upon Bakove's goods by Benjamin F. Stilling, constable. The happenings beginning with the distraint and continuing to the alleged sale of the goods give rise to the two questions which we believe to be controlling on the question of a new trial. They are:

(*a*) Was the levy made before or after sundown; (*b*) had public notice of the sale been given by the posting of bills?

The plaintiff charges that the distraint was made at 8 p. m., which is admittedly after sundown, and that no notice of sale was posted, and that therefore no legal sale took place, as required by the Act of March 21, 1772, 1 Sm. L. 370, sec. 1. The trial judge submitted both questions to the jury with the instruction that "if either of these things was the case, either if the levy was made in the evening or if public notice of that sale was not given, your verdict is for the plaintiff." The jury returned a verdict of $2,150 in favor of the plaintiff against both defendants.

Reilly complains that if the jury, so charged, resolved either of these questions in favor of the plaintiff, the jury had no choice but to find against both defendants, but if the jury found the first question against the plaintiff, then regardless of their findings on the second question the verdict of the jury should have been in his, Reilly's, favor, for if the distraint was made at a proper time, that is to say, between sunrise and sundown, then under the decisions the landlord's liability ceased. He contends further that whether or not the constable gave the required public notice of the sale as prescribed by the act, it could not affect the landlord because at that time the constable was not acting as his agent but as an officer of the law.

We are therefore confronted with the very interesting question of determining whether or not the liability of the landlord ceases with the taking of the distress and the service of notice thereof upon the tenant, thus relieving him of further responsibility for irregular or improper acts of the constable in the proceedings ending with sale, or whether, as contended by the plaintiff, the

landlord is liable as a trespasser ab initio for any irregularity committed at any stage of the proceedings.

Because there is authority in support of both contentions, we have made a careful study of the cases. It may be conceded a priori that the weight of all authority makes the landlord liable for an illegal distress by his bailiff or agent, even though his agent is a constable, who acts therein as agent and not as an officer of the law: Mortgage B. & L. Assn. v. Van Sciver et al., 304 Pa. 408. See also Commonwealth et al. v. Abrams, 94 Pa. Superior Ct. 556.

After distraint and notice, by virtue of the provisions of the Act of 1772, supra, a new element appears in the proceedings. Before the goods can be appraised "the person distraining shall and may, with the Sheriff, Under-Sheriff, or Constable in the city or county where such distress shall be taken (who are hereby required to be aiding and assisting therein) cause the goods and chattels so distrained to be appraised by two reputable freeholders, etc.": Act of 1772. It is evident, therefore, that from this stage on the landlord is required by law to entrust the subsequent steps to the "sheriff, under-sheriff or any constable" who acts as an officer of the law and as such is held to the performance of his duties as prescribed in the act. True it is that the language of the act is that the constable is required to be "aiding and assisting therein", the implication being that he aids and assists the landlord, but by the terms of the act all the agenda is placed in the hands of the sheriff or constable. It is therefore apparent that, after the constable steps in, the proceedings are completely and exclusively in his hands and his acts are those of an officer of the law.

When it is borne in mind that the Act of 1772 followed the enactment of an English statute enlarging and improving the remedy by distress, which is a common-law right empowering the landlord to impound the goods of his tenant to compel the payment of rent in arrears, in times when the landlord acted in his proper person and retained possession in person or by his agent, it is not difficult to understand the historical continuity of the reference to the distrainer's presence in our act. A glimpse, however, at the realities of our present practice of making distraints shows that the landlord hands his warrant to a constable and leaves with him the responsibility of executing it in its various stages according to law. He rarely appears upon the scene to take part in the proceedings.

The utterance of Mr. Justice Simpson in Mortgage B. & L. Assn. v. Van Sciver et al., supra, appears to be quite pertinent: "It has sometimes been thoughtlessly said that, in all the proceedings from the distraint up to and including the sale, the sheriff, under-sheriff or constable is acting in no other capacity than as agent of the distrainer, and that no more effect can be given to his acts than would be given to that of any other person who was acting as such agent. As will be noticed, the statute draws a clear distinction between the act of distraint, with the service of notice thereof on the tenant, and the later steps taken in the distraint proceedings, and so we have recognized whenever the matter has been passed upon by this court. Thus, in Wells v. Hornish, 3 P. & W. 30, 33, we said: 'In case of a distress by a landlord, for rent due in arrear, if the tenant or owner of the goods should not, within the space of five days after such distress taken, replevy the goods, they are, under the Act of Assembly of the 21st of March, 1772, to be appraised; at which the sheriff or under-sheriff, or a constable, must be present, aiding and assisting, and *not before*. So if any other than the sheriff, under-sheriff or constable, be made bailiff, and distrain the goods of the tenant, such an officer must be called in to the appraisement of the goods, and to superintend and conduct the sale of them in all cases as directed by this act.' In McElroy v. Dice, 17 Pa. 163, 169, where

both the owner and the constable were held liable for an excessive distress, we said 'the constable is not bound to make a distress for rent . . . the law only requires his interference, *after* the distress made, should an appraisement and sale become necessary.' So, too, in Murphy v. Chase et al., 103 Pa. 260, where it was sought to establish the rule that there was a presumption of regularity in the distraint and all that followed it, we said, at page 262: 'The general rule is that an officer of the law is presumed to have done his duty. So, when a public officer has done an act which should be preceded by certain preliminary steps, it will be presumed they were taken. All these presumptions, however, must be limited to his acts as an officer. They do not apply to his precedent acts done as an agent. Hence in this case it was incumbent upon the plaintiff to prove that notice of the distress with the cause of such taking was given to the tenant before the appraisement was made. Having wholly failed to prove this, the sale was invalid.' The Superior Court has reached the same conclusion. In Walter v. Jenkins, 92 Pa. Superior Ct. 526, 528, it is said: 'A sheriff or constable is not bound to make a distress for rent, for all the duties imposed upon them by statute are those which follow the distress, or those which relate to appraisement and sale, should that become necessary as is prescribed by the Act of March 21, 1772.' And, in Com. et al. v. Abrams, 94 Pa. Superior Ct. 556, 558, 'A constable who distrains goods under a landlord's warrant is not an officer of the law, but the agent of the landlord merely, until an appraisement has been made and the legal processes provided by the statute call for a sale of the property distrained.' Under our cases above quoted, the opinion last cited is too limited in its scope. It should have stated, under the language of the Act of 1772 and our cases construing it, that a constable begins to act as an officer of the law when an appraisement is required.

"It follows that, as all the acts of the constable in this case, after the distress made and notice thereof, were done virtute officii, a rebuttable presumption of regularity arises as to them. . . ."

Therefore, with the appraisement the landlord retires and the constable steps in. What then is the effect of a procedural irregularity between the appraisement and sale? Is the constable then acting as the agent of the landlord or as an officer of the law virtute officii? His authority is derived from the Act of 1772 and not from the landlord, who could not make him his agent if he would. Having no choice in the matter, upon what legal principle can it be said that the landlord is liable for the acts of the constable? The liability of the landlord as a trespasser ab initio, it seems to us, can arise only on the doctrine of agency. When this relationship ends, his liability ends with it.

We are not unmindful of the ruling in Brisben et al. v. Wilson, 60 Pa. 452, and Esterly Machine Co. v. Spencer, 147 Pa. 466, the sweeping effect of which was to make the landlord liable as a trespasser ab initio for any irregularity at any stage of the proceeding. Kerr et al. v. Sharp, 14 S. & R. 399, appears to be most frequently quoted in sustaining the English rule that any irregularity in taking a distress makes the landlord at common law a trespasser ab initio: Common Law of Landlord and Tenant, 491; 3 Bl. Com. 16, etc. The harshness of this rule was recognized in England by the enactment of the Act of Parliament of 11 Geo. 2, c. 19, mitigating its rigors, which, however, was not adopted by our legislature in the Act of 1772.

A study of the cases that hold the landlord liable throughout shows that in the great majority of them the trespass complained of was committed before appraisement, as for a distraint illegal per se, or where no rent was due, or for more rent than was due, or for some overt act of the landlord committed after proper distraint.

Of more than passing interest is the opinion of Audenried, J., in the case of Riggin v. Becker, 9 Dist. R. 439, wherein Dunn, a constable, and his assistants broke into the plaintiff's house forcibly after having been furnished with a warrant by Becker, real estate agent, to take a distress. Refusing to take off the nonsuit, Judge Audenried said: "that a principal is responsible for the acts of his agent within the scope of his employment is not to be questioned. We do not think, however, that it applies to the case of a bailiff who enters to distrain by forcing open a door, or takes the tenant's chattels before sunrise or after sunset. His duty is to distrain, i. e., to take a distress. His authority extends no further. When one's bailiff seizes a tenant's goods by night or in the highway, or after making a forcible entry on the demised property, he does not distrain. Goods so taken are not capable of being held as a distress."

If we are correct, it would appear that the landlord may be liable for the act of his agent up to the time when the constable is brought into the proceedings by virtue of the provisions of the Act of 1772. Beyond that, the responsibility is upon the constable alone unless the landlord makes himself a party by his own behavior. It follows, therefore, that the motion of Thomas F. Reilly for a new trial must be granted, in order that the jury may have the opportunity of passing upon the issues in the light of the legal principles herein stated.

And now, to wit, July 24, 1934, the rule for new trial as to Thomas F. Reilly is made absolute.